DAVID CARLSON, WSBA #35767
DISABILITY RIGHTS WASHINGTON
315 Fifth Avenue South, Suite 850
Seattle, WA 98104
(206) 324-1521

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| G.R. by and through his legal guardian, Kelly Moore; D.H.; and DISABILITY RIGHTS WASHINGTON, | No. _____ |
| **Plaintiff,** | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| vs. | |
| CHRISTINE GREGOIRE, Governor of the State of Washington; SUSAN DREYFUS, Secretary of the Washington State Department of Social and Health Services; WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES; ELDON VAIL, Secretary of the Washington State Department of Corrections; and WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | |
| **Defendants.** | |

## I.    **PRELIMINARY STATEMENT**

1.1    This is a civil rights complaint seeking declaratory and injunctive

relief, brought by two individually named plaintiffs, G.R., by and through his legal

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 1

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

guardian, Kelly Moore, and D.H, and by Disability Rights Washington as an organization on behalf of its constituents and clients with mental illness, developmental disabilities, borderline intellectual functioning, and traumatic brain injuries who will be or are at serious risk of being subjected to imprisonment as a result of Engrossed Substitute Senate Bill (ESSB) 6610. ESSB 6610 was passed by the legislature and then signed into law by Governor Gregoire on March 31, 2010. This law allows the Washington State Department of Social and Health Services (DSHS), at her sole discretion and without due process, to transfer hospital patients who have been found not guilty by reason of insanity (NGRI) to a prison facility operated by the Washington State Department of Corrections (DOC), these patients will be denied treatment in the forensic mental health units of the state psychiatric hospitals (Eastern State Hospital and Western State Hospital) operated by DSHS and established for that very purpose. Placing patients found NGRI in prison rather than at a forensic hospital deprives them of access to minimally adequate treatment sufficient to give them a reasonable opportunity to have the symptoms of their mental illness ameliorated. This violates the patients' Fourteenth Amendment rights to substantive and procedural due process and equal protection under the law; the Fifth Amendment right to be free from being placed in double jeopardy; the Constitutional prohibition against *ex post facto* punishment; and the rights provided to people with disabilities to be free

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 2

from discrimination on the basis of their disabilities under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* and the regulations promulgated thereunder; and Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, and the regulations promulgated thereunder.  Plaintiffs seek preliminary and permanent injunctive relief to prevent Defendants from implementing ESSB 6610 and a declaration that ESSB 6610 is unlawful and unconstitutional.  Absent such relief, Plaintiffs will be or are at serious risk of suffering immediate irreparable harm.

## II.    JURISDICTION AND VENUE

2.1    This action arises under federal law, including the United States Constitution and federal statutes.  This Court has jurisdiction and authority to enter declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331(a), 1343(3) & (4), 1367, 2201, 2202, 42 U.S.C. §§ 1983, 1988, 12205, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

2.2    Venue is appropriate under 28 U.S.C. § 1391(b), as all of the acts and omissions of all defendants occurred in the State of Washington.  All of the parties reside in the State of Washington and plaintiffs' claims for relief arise within this state.  Each cause of action arises at least in part in this district.  This district provides the most convenient forum for the litigation of these issues.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 3

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

# III.    PARTIES

**A.    Plaintiffs**

**(1)    Plaintiff G.R.**

3.1.    Plaintiff G.R., by and through his legal guardian Kelly Moore, is a current patient of Eastern State Hospital, as a result of being found not guilty by reason of insanity in 1988.

3.2.    G.R. is fifty-two years old and has both a developmental disability and mental illness. He is a "qualified individual with a disability" as defined by the Americans with Disability Act and Section 504 of the Rehabilitation Act and their implementing regulations. G.R. is a class member of the *Marr, et al., v. Eastern State Hospital, et al.*, USDC C-02-0067-WFN lawsuit brought by Plaintiff Disability Rights Washington on behalf of a class of patients with developmental disabilities and mental illness to ensure class members receive treatment that is responsive to their individual habilitative and psychiatric needs.

3.3.    Prior to entering Eastern State Hospital, G.R. was enrolled as a client of the Department of Social and Health Service's Division of Developmental Disabilities.  Due to his developmental disability, G.R. currently receives service on Eastern State Hospital's Habilitative Mental Health (HMH) Unit, which is designed, pursuant to the Court's Order in *Marr*, specifically to provide treatment

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 4

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

that meets the needs of people with a dual diagnosis of developmental disability and mental illness.

3.4.   On the HMH unit G.R. has access to not just medication and standard psychiatric care, but additional programmatic and environmental conditions that are designed to comprehensively respond to his treatment needs that result from his developmental disability as well as his psychiatric condition.  This includes but is not limited to, the provision of individualized habilitative mental health services based on an individualized habilitative mental health treatment plan, lower stimulation on the unit, his own room with personal belongings, vocational habilitation, afternoon treatment meetings, positive behavioral support planning developed by an interdisciplinary team trained in the construction and implementation of positive behavior supports, and daily access to a social activities room where G.R. can work on his social skills.

3.5.   Prior to his admission to Eastern State Hospital, G.R. has served time in Washington State prisons.

3.6.   Since ESH began to provide G.R. with habilitative mental health treatment as mandated by the *Marr* Order, G.R. has made significant improvements and progressed with his treatment such that he hopes to transition back into the community where he would continually need the support to remain safe in the community.

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

3.7.    G.R. fears that being transferred to prison would not only harm him by placing him at risk of harm from criminals, but also remove the habilitative treatment that he needs to get well enough to one day be discharged back to the community.

3.8.    Because G.R. has been adjudicated NGRI he is at serious risk of being transferred to a prison facility if ESSB 6610 § 2 is implemented.

3.9.    If G.R. is transferred from the HMH unit at Eastern State Hospital to a prison facility he is at serious risk of irreparable harm, including but not limited to, engaging in self-injurious behaviors such as head-banging against the walls and floors.  G.R. has an extensive history of engaging in such maladaptive behaviors, particularly when he does not receive the necessary habilitative mental health treatment.

3.10.    Additionally, G.R. has a history of being victimized and assaulted by others who are higher functioning than he before he was transferred to the HMH unit at Eastern State Hospital.  If he is transferred to a prison facility, G.R. is at serious risk of being once again victimized by other higher functioning inmates because he will not have the protections currently afforded to him on the HMH unit at Eastern State Hospital.

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**(2)   Plaintiff D.H.**

3.11.   Plaintiff D.H is a current patient of Eastern State Hospital as a result of being found not guilty by reason of insanity in 2004.  D.H. was conditionally released in 2006, but his conditional release was revoked after his mental illness worsened in the community and he committed assault. Currently, D.H. continues to be detained in the hospital pursuant to the court judgment finding that he was not guilty by reason of insanity.

3.12.   D.H. is diagnosed with Bipolar Disorder Manic Type with Psychotic Features. He is a "qualified individual with a disability" as defined by the Americans with Disability Act and Section 504 of the Rehabilitation Act and their implementing regulations.

3.13.   D.H. receives mental health services including behavioral classes to address his patterns of thinking and anger therapy.  He has close contact with his psychiatrist, and assistance with medication management.

3.14.   D.H. does not want to go to a correctional facility because he is not a criminal.  A court has already determined that he only committed the acts that would otherwise constitute a crime because of his mental illness.  D.H wants to continue to receive the mental health treatment at Eastern state Hospital in a setting in which he and everyone else around him is safe.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 7

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

3.15.  D.H. will suffer immediate irreparable harm if transferred to prison as a result of being removed from their current therapeutic environments, increased liberty restrictions resulting from punitive prison environment, lack of procedural due process, being placed in double jeopardy of criminal sanctions, being subjected to *ex post facto* punishment and discrimination against them due to his disabilities.

**(3)    Plaintiff Disability Rights Washington**

3.16.  Plaintiff Disability Rights Washington ("DRW") is a non- profit corporation duly organized under the laws of the State of Washington to protect and advocate for legal and civil rights of those citizens of this state who have physical, mental and developmental disabilities pursuant to the "Developmental Disabilities Assistance and Bill of Rights Act," 42 U.S.C. § 15041, *et seq.*; the "Protection and Advocacy for Individuals with Mental Illness Act," as amended, 42 U.S.C. § 10801, *et seq.*; and RCW 71A.10.080.  DRW maintains its offices at 315 5th Avenue South, Suite 850, Seattle, Washington  98104.

3.17.  As the duly designated protection and advocacy system for individuals with mental, physical, and developmental disabilities in the state of Washington, DRW has the authority and responsibility to pursue legal, administrative, and such other appropriate remedies or relief as may be necessary to protect and advocate for the rights of those persons within the state of Washington who are, or who may be, eligible for treatment, services, or

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 8

1   habilitation due to their developmental, mental, or physical disabilities. 42 U.S.C.

2   §§ 15041, *et seq.*, and 10801, *et seq.*; 29 U.S.C. § 794e, and the regulations

3   promulgated thereunder.

4    3.18. Pursuant to the requirements of federal law, DRW has a Board of

5   Directors and an advisory council for individuals with mental illness.

6   Additionally, it has an advisory council for individuals with developmental

7   disabilities and/or physical disabilities, which is not required by federal law. DRW

8   also has an *ad hoc* committee for individuals with traumatic brain injuries and their

9   families.

10   3.19. Over 60% of DRW's Board of Directors are individuals with

11  disabilities and family members of individuals with disabilities.

12   3.20. DRW's advisory councils and *ad hoc* committee are comprised of

13  over 60% of individuals with disabilities or family members of people with

14  disabilities. These individual include, but are not limited to, individuals with

15  mental illness and individuals with developmental disabilities.

16   3.21. DRW is class counsel for *Marr, et al., v. Eastern State Hospital, et al.*,

17  USDC C-02-0067-WFN which is a class action addressing the habilitative mental

18  health needs of people with a dual diagnosis of developmental disability and

19  mental illness at Eastern State Hospital. Individuals who are NGRI are currently

20  class members and those who may be admitted to the class in the future due to

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 9

being NGRI will be irreparably harmed if denied habilitative mental health treatment and transferred to a prison to receive their mental health treatment.

3.22.  NGRI patients' privileges have been limited and they have been subjected to being locked down on the unit because there are fears about the security at Eastern State Hospital.  The new law could allow the Department of Social and Health Services to move any and all NGRI patients into a correctional facility because the security at Eastern State Hospital has been questioned since another patient took left the supervision of the facility staff during after an outing to a local fair and was out of the hospital's custody for several days.

3.23.  Defendants' actions and inactions adversely affect DRW's organizational interests and the legal rights of its clients and constituents who are currently hospitalized as a result of being found NGRI, and those who are currently or may be in the future contemplating the use of defense of NGRI, as set forth and more fully described in paragraphs 4.1 through 5.43, below.

**B.     Defendants**

**(1)     Governor of the State of Washington, Christine Gregoire**

3.24.  Defendant Christine Gregoire is sued in her official capacity as Governor of the State of Washington.  Defendant Gregoire's administrative office is located in Olympia, Washington.

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  •  Fax: (206) 957-0729

3.25.  Defendant Gregoire, in her official capacity, has at all times relevant herein exercised general responsibility, supervision, and oversight of the policies, practices, and operations of the Department of Social and Health Services, the Department of Corrections, and the hiring, supervision, and retention of the Department's respective Secretaries.  As the Chief Executive of the State of Washington, Defendant Gregoire is responsible for implementing and ensuring compliance with state and federal constitutional and statutory protections for people detained in Washington's hospitals for inpatient mental health treatment and those incarcerated in Washington's prisons as a result of violations of criminal statutes.

### (2)    Washington State Department of Social and Health Services

3.26.  Defendant Washington State Department of Social and Health Service ("DSHS") is the sole state agency in the state of Washington designated to administer or supervise the administration of mental health treatment to people committed by the courts to long term inpatient treatment pursuant to RCW 71.05.010 *et seq.* (involuntary civil commitment) and RCW 10.77.010 *et seq.* (involuntary forensic commitment) at Eastern State Hospital in Medical Lake, WA and Western State Hospital in Lakewood, WA.  As such, DSHS utilizes federal and state funds in operating services in a way that ensures compliance with state

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 11

1    and federal constitutional and statutory protections for people involuntarily

2    detained in order to receive mental health services.

3        **(3)    DSHS Secretary Susan Dreyfus, in her official capacity**

4        3.27.   Defendant Susan Dreyfus is sued in her official capacity as Secretary

5    of DSHS.  Defendant Dreyfus's administrative office is located in Olympia,

6    Washington.

7        3.28.   Defendant Dreyfus, in her official capacity, has at all times relevant

8    herein exercised general responsibility, supervision, and oversight of the policies,

9    practices, and operations of DSHS pursuant to RCW 43.20A.050.  Defendant

10   Dreyfus's responsibilities include, but are not limited to, the care, custody, and

11   welfare of persons with developmental disabilities, traumatic brain injury, and

12   mental illness who receive services at those state facilities and programs that are

13   funded, operated, licensed, or supervised by DSHS.  Defendant Dreyfus's

14   responsibilities also include deciding which patients will be moved from the

15   forensic mental health units of Eastern and Western State Hospitals to a prison,

16   pursuant to ESSB 6610 § 2.

17       **(4)    Washington State Department of Corrections**

18       3.29.   Defendant Washington Department of Correction ("DOC") is the sole

19   state agency in the state of Washington designated to administer or supervise the

20

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 12

administration of prisons for people sentenced by the courts to long term

incarceration at:

Airway Heights Corrections Center in Airway Heights, WA;

Cedar Creek Corrections Center in Little Rock, WA;

Clallam Bay Corrections Center in Clallam Bay, WA;

Coyote Ridge Corrections Center in Connell, WA;

Larch Corrections Center in Yacolt, WA;

McNeil Island Corrections Center on McNeil Island in the South Puget

Sound;

Mission Creek Corrections Center for Women in Belfair, WA;

Monroe Correctional Complex in Monroe, WA;

Olympic Corrections Center near Forks, WA;

Pine Lodge Corrections Center for Women in Medical Lake, WA;

Stafford Creek Corrections Center in Aberdeen, WA;

Washington Corrections Center in Shelton, WA;

Washington Corrections Center for Women in Purdy, WA; and

Washington State Penitentiary in Walla Walla, WA.

3.30.  As such, DOC is responsible for implementing and ensuring

compliance with state and federal constitutional and statutory protections for

people incarcerated in its facilities.

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

**(5)    DOC Secretary Eldon Vail, in his official capacity**

3.31.  Defendant Eldon Vail is sued in his official capacity as Secretary of DOC.  Defendant Vail's administrative office is located in Olympia, Washington.

3.32.  Defendant Vail, in his official capacity, has at all times relevant herein exercised general responsibility, supervision, and oversight of the policies, practices, and operations of DOC.  Defendant Vail's responsibilities include, but are not limited to, the care, custody, and welfare of prisoners who are confined in or receive services at those state facilities and programs that are funded, operated, licensed, or supervised by DOC including the treatment and programs provided to patients who are moved from the forensic mental health units of Eastern and Western State Hospitals to a Department of Corrections run prison, pursuant to ESSB 6610 § 2.

## IV.    STATEMENT OF FACTS

4.1    Plaintiffs reallege the allegations in paragraphs 1.1 through 3.32 above.

4.2    At all times relevant herein, defendants, in their official capacities, were and are under an affirmative obligation to make their programs, services, and activities operate consistent with the United States Constitution.

4.3    At all times relevant herein, the defendants, in their official capacities, were and are under an affirmative obligation to provide procedural due process to

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 14

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

NGRI patients they seek to transfer from a state psychiatric hospitals, community settings under DSHS legal custody as a result of a conditional release, or city and county jails, to a state prison.

4.4     At all times relevant herein, the defendants, in their official capacities, were and are under an affirmative obligation to provide substantive due process to NGRI patients they seek to transfer from a state psychiatric hospitals, community settings under DSHS legal custody as a result of a conditional release, or city and county jails, to a state prison.

4.5     At all times relevant herein, the defendants, in their official capacities, were and are under an affirmative obligation to provide refrain from placing people in double jeopardy.

4.6     At all times relevant herein, the defendants, in their official capacities, were and are under an affirmative obligation to refrain from imposing *ex post facto* punishment.

4.7     At all times relevant herein, defendants, in their official capacities, were and are under an affirmative obligation to make their programs, services, and activities accessible to otherwise qualified individuals with disabilities under Title II of the Americans with Disabilities Act and the regulations promulgated thereunder.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 15

4.8    At all times relevant herein, defendants, in their official capacities, were and are under an affirmative obligation to make their programs, services, and activities accessible to otherwise qualified individuals with disabilities under the Rehabilitation Act and the regulations promulgated thereunder.

4.9    Plaintiff Disability Rights Washington represents the interests of its constituents and clients who are currently committed pursuant to RCW 10.77.110 after being acquitted as NGRI.  These individuals receive treatment at Eastern State Hospital and Western State Hospital, or await treatment in city and county jails, or remain under DSHS legal custody while on conditional release in the community.

**A.    Acquittal By Reason Of Insanity Under RCW**

4.10    Washington State law, RCW 10.77.080, allows a court to acquit a defendant charged with a crime if the defendant proves that he or she should not be held criminally culpable for the specific actions in question because he or she was insane at the time of the act relating to the criminal charge.

4.11    If a criminal defendant is acquitted, RCW 10.77.110 provides that the person shall be released from custody unless the person is "a substantial danger to other persons" or "a substantial likelihood of committing criminal acts jeopardizing public safety or security."  If the person acquitted due to being found NGRI is not released after the verdict, the court "shall order his or her

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 16

*hospitalization*, or any appropriate alternative treatment *less restrictive than detention in a state mental hospital...*" *Id.* (emphasis added).

4.12   RCW 10.77.110 also recognizes the specialized needs of NGRI patients with developmental disabilities.  The law calls for people with developmental disabilities to get treatment in a:

> program specifically reserved for the treatment and training of developmentally disabled persons. A person so committed shall receive habilitation services according to an individualized service plan specifically developed to treat the behavior which was the subject of the criminal proceedings. The treatment program shall be administered by developmental disabilities professionals and others trained specifically in the needs of developmentally disabled persons.

**B.    Forensic Mental Health Treatment At Eastern State Hospital And Western State Hospital**

4.13   Eastern and Western State Hospitals each have units designed specifically for forensic patients.

4.14   The forensic units operated by each hospital have heightened security beyond that found on other locked units of the hospital.  The security includes, but is not limited to: video surveillance of points of egress; remote electronic controls for locks at points of egress operated from a secure setting; "sally ports" allowing only one of two locked doors to open at any given time when allow egress from the unit as a whole as well as at the point of egress to each of individual wards on the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 17

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

respective forensic units; metal detectors at points of egress; extensive training of staff in security precautions.

4.15    The treating professionals serving patients in the forensic units, like all other units at Eastern and Western State Hospitals, are bound by the Fourteenth Amendment which requires they actively exercise their professional development when delivering treatment that meets the individual need of their patients.

4.16    The treating professionals serving prisoners in the DOC operated prisons are bound by the Eighth Amendment prohibition against cruel and unusual punishment which requires only that they refrain from being deliberately indifferent to the treatment needs of the prisoners.

## C.    *Marr*, *Allen*, and *Rust* Litigation

4.17    Plaintiff Disability Rights Washington is class counsel for *Marr, et al., v. Eastern State Hospital, et al.*, USDC C-02-0067-WFN, a lawsuit related to the instant case and Disabilities Rights Washington served as class counsel in *Allen v. Western State Hospital, et al.*, USDC C99-5018RJB and *Rust, et al., v. Western State Hospital, et al.*, USDC C00-5749 (RJB), two other previously settled and dismissed class actions that address the adequacy of treatment for people who will be affected by ESSB 6610, the law being challenged in the instant case.

4.18    Eastern and Western State Hospitals serve NGRI patients who have developmental disabilities, borderline intellectual functioning, traumatic brain

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 18

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

injury, and other disabilities which require habilitative treatment in addition to, or instead of, the standard psychiatric care provided in the forensic units.

4.19   At least one class member of the currently active *Marr* class action have been committed to the state hospital as a result of being found NGRI.  These individuals receive treatment that is responsive to their developmental disabilities at Eastern State Hospital.  Other individuals who were class members of the similar but now settled and dismissed *Allen* class action dealing with the need for similar treatment at Western State Hospital, have also been committed to the state hospitals as result of being found NGRI.

4.20   As a result of the *Marr* and *Allen* class actions, Eastern and Western State Hospitals operate specialized wards that are designed to provide habilitative mental health (HMH) treatment to people with developmental disabilities who are committed to the state hospitals.  These HMH units are available to treat NGRI patients with developmental disabilities directly, or provide clinical assistance to the staff on the forensic wards if the individual's security needs necessitate he or she receive treatment on the regular, more highly secured forensic wards.

4.21   As a result of  the *Rust* Amended Order, a now dismissed class action dealing with the conditions and adequacy of treatment at Western State Hospital's forensic unit, Western State Hospital operates not just an HMH unit, but also a specialized ward on its forensic unit for people with additional treatment needs.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 19

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

This unit serves people with developmental disabilities, borderline intellectual functioning, traumatic brain injury, and other patients who need habilitative treatment in addition to, or instead of, the standard psychiatric care provided in the forensic unit.

**D.     Treatment In Washington's Prisons**

4.22   The statute being challenged does not place any heightened requirements for treatment in any specific prison or unit within a prison that will serve the acquitted NGRI patients transferred to the prison by the secretary of DSHS beyond the services already offered to prisoners.

4.23   Prisoners with developmental disabilities, mental illness, and TBI at state prisons do not receive habilitative mental health services.

4.24   Most prisoners in the Department of Corrections system who are "seriously mentally ill" or "dangerously mentally ill" are housed at the Special Offender Unit in the Monroe Correctional Facility.

4.25   Prisoners of all types, including prisoners with mental illness, developmental disabilities, and traumatic brain injuries, are all subject to standard prison discipline, including solitary confinement as punishment. Solitary confinement of individuals with mental illnesses, such as NGRI patients, is likely to result in decompensation and self-harm. Patients with mental illnesses, traumatic brain injuries, or developmental disabilities are more likely than others to be

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 20

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

subject to prison discipline because the behavioral manifestations of their

disabilities can result in "infractions."  These individuals are less likely to be able

to change their behavior in response to prison rules. This makes it likely that

prisoners with mental illnesses, developmental disabilities and TBI will

commit repeated infractions, and as a result have privileges removed, spend

excessive time in isolation, and suffer the debilitating effects of these punishments.

**E.     Engrossed Substitute Senate Bill 6610**

4.26   On March 11, 2010, the legislature passed Engrossed Substitute

Senate Bill (ESSB) 6610.  Attached as Exhibit 1.

4.27   ESSB 6610 includes Section 2 which reads:

(1) If the secretary determines in writing that a person committed to
the custody of the secretary for treatment as criminally insane presents
an unreasonable safety risk which, based on behavior, clinical history,
and facility security is not manageable in a state hospital setting, the
secretary may place the person in any secure facility operated by the
secretary or the secretary of the department of corrections. Any person
affected by this provision shall receive appropriate mental health
treatment governed by a formalized treatment plan targeted at mental
health rehabilitation needs and shall be afforded his or her rights
under RCW 10.77.140, 10.77.150, and 10.77.200. The secretary of the
department of social and health  services shall retain legal custody of
any person placed under this section and review any placement
outside of a department mental health hospital every three months, or
sooner if warranted by the person's mental health status, to determine
if the placement remains appropriate.

(2) Beginning December 1, 2010, and every six months thereafter, the
secretary shall report to the governor and the appropriate committees
of the legislature regarding the use of the authority under this section
to transfer persons to a secure facility. The report shall include

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

information related to the number of persons who have been placed in a secure facility operated by the secretary or the secretary of the department of corrections, and the length of time that each such person has been in the secure facility.

(3) This section expires June 30, 2015.

**F.    Impact On Disability Rights Washington's Constituents And Clients Who Will Be Affected By ESSB 6610 § 2**

4.28    The implementation of ESSB 6610 will cause the affected NGRI acquitees to suffer irreparable harm.

4.29    The consequences of NGRI patients moving to prison include, but are not limited to, being transferred from HMH units at Eastern and Western State Hospitals or transferred from specialized or regular forensic mental health treatment units staffed with psychiatric staff specially trained to meet these patients unique treatment needs to in one of the several state prisons located across the state.

4.30    Those  individuals with developmental disabilities transferred out of the HMH units or specialized habilitative forensic units will be subject to even greater harm due to the total lack of specialized habilitative mental health treatment designed especially for individuals diagnosed with both developmental disabilities and mental illness.

4.31    Another consequence of NGRI patients receiving treatment in a prison instead of a hospital is that they will have a harder time receiving the treatment

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

they need to improve due to the lower Constitutional protections and barriers to enforcement of rights resulting from the Prison Litigation Reform Act.

4.32    The longer it takes the NGRI patients to get better, the longer it takes for them to meet discharge and/or conditional release requirements.  Thus their overall confinement is longer than necessary.

4.33    Prisons are more restrictive settings than forensic units of hospitals.

4.34    DOC's prisons are intended to be punitive.

4.35    DSHS's hospitals are not intended to be punitive.

4.36    On March 17, 2010, a coalition of advocates including DRW the Americans' Civil Liberties Union of Washington, the Washington Defender Association, and the Washington Association of Criminal Defense Lawyers sent a letter to Defendant Governor Gregoire advising her that they had great concerns about the legality of ESSB 6610 § 2. Attached hereto as Exhibit 2. The coalition asked Defendant Gregoire to veto this specific problematic section that would allow for the transfer of NGRI patients to prison.

4.37    The national office of the National Alliance of the Mentally Ill (NAMI) and Washington chapter of NAMI each sent their own letters of concern which also asked the Governor to veto § 2. Attached hereto as Exhibits 3 and 4 respectively.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 23

4.38   In their letters and meetings with the Governor's office members of the coalition and the national and state NAMIs offered to collaborate with the governor's office to find solutions to the state's perceived security problems which would not violate the rights of NGRI patients.

4.39   Defendant Governor Gregoire rejected the offers to further examine legal alternative with advocates and stakeholders and instead decided to give the Secretary of DSHS unfettered authority to move previously acquitted patients to prison without due process of law by signing ESSB 6610 into law on March 31, 2010 without vetoing § 2.

4.40   The Washington Constitution allows for this new law to go into effect 90 days after the governor's signature which is June 29, 2010.

4.41   Each of the defendants have and continue to operate under color of state law.

4.42   Absent the requested relief, Plaintiff DRW's constituents  and clients will continue to be at risk of suffering irreparable harm.

4.43   Plaintiffs have no adequate remedy at law.

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

## V.    LEGAL CLAIMS

**COUNT ONE:    VIOLATIONS OF SUBSTANTIVE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY AND THROUGH 42 U.S.C. § 1983 (Against Defendants Susan Dreyfus, Secretary of DOC, and Christine Gregoire)**

5.1    Plaintiffs reallege and reincorporate paragraphs 1.1 through 4.43 above.

5.2    The Fourteenth Amendment to the United States Constitution guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1, cl. 3.

5.3    Defendants are, and at all relevant times herein were, state actors working for state entities and as such are obligated to provide Plaintiff's constituents procedural due process of law when restricting their substantive rights under the Constitution and statutes of the United States of America.

5.4    Defendants, by their actions, inactions, and omissions, have and continue to violate DRW's constituents' legal rights under the Fourteenth Amendment of the Constitution by depriving them of their substantive due process right to liberty by:

a.    subjecting them to punishment, although they have not been convicted of committing a crime;

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 25

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

b.    denying them minimally adequate treatment reasonably calculated to cure them.

**COUNT TWO:    VIOLATIONS OF PROCEDURAL DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY AND THROUGH 42 U.S.C. § 1983 (Against Defendants Susan Dreyfus, Christine Gregoire, and Eldon Vail)**

5.5    Plaintiffs reallege and reincorporate paragraphs 1.1 through 5.4 above.

5.6    ESSB 6610 § 2 violates the patients' Fourteenth Amendment right to procedural due process by providing no means of challenging Defendants' decision to imprison them.

5.7    Defendants are, and at all relevant times herein were, state actors working for state entities and as such are obligated to provide Plaintiff's constituents with procedural due process of law when restricting their substantive rights under the Constitution and statutes of the United States of America.

5.8    Defendants, by their actions, inactions, and omissions, have and continue to violate DRW's constituents' legal rights under the Fourteenth Amendment of the Constitution by depriving them of procedural due process of law by:

a.    Imprisoning individuals who have previously been acquitted by a court of law, in the same facilities and under the same punitive prison conditions alongside prisoners who are currently serving time on sentences relating to crimes for which they have actually been convicted.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 26

b.    imprisoning any patients Defendant Dreyfus sends to DOC without regard to any procedural safeguards to ensure the individual meets the criteria for transfer set by ESSB 6610 §2.

**COUNT THREE: VIOLATIONS OF EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY AND THROUGH 42 U.S.C. § 1983 (Against Defendants –Gregoire, Dreyfus, and Vail)**

5.9    Plaintiffs reallege and reincorporate paragraphs 1.1 through 5.8 above.

5.10    ESSB 6610 Violates the Equal Protection clause of the Fourteenth Amendment by intentionally singling out NGRI patients for punishment. The punishment exceeds that experienced by people who have been otherwise acquitted and even those convicted of crimes. Defendants subject individuals who have been acquitted due to an insanity defense to criminal punishment when others acquitted of crimes are not subject to criminal punishment of any sort and by imprisoning NGRI patients with indefinite sentences when prisoners who have been convicted have specified sentences.

5.11    Defendants are, and at all relevant times herein were, state actors working for state entities and as such are obligated to provide Plaintiff's constituents equal protection under the law.

5.12    Defendants, by their actions, inactions, and omissions, have violated and continue to violate DRW's constituents' legal rights to equal treatment under the law as protected by the Fourteenth Amendment of the Constitution by:

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

  a.  punishing them, when Defendants do not punish people acquitted through other defenses;

  b.  punishing them for indefinite periods of time, up to the maximum sentence for the crime of which they are acquitted, when people convicted of crimes are given a set sentence determined by a court in accordance with sentencing guidelines which can be less than the maximum sentence and may be shortened by meeting specific criteria.

**COUNT FOUR: VIOLATIONS OF FIFTH AMENDMENT PROHIBITION AGAINST DOUBLE JEOPARDY AS INCORPORATED BY THE FOURTEENTH AMENDMENT BY AND THROUGH 42 U.S.C. § 1983**

5.13 Plaintiffs reallege and reincorporate paragraphs 1.1 through 5.12 above.

5.14 ESSB 6610 § 2 violates patients' Constitutional rights as protected by the Fifth Amendment as incorporated by the Fourteenth Amendment by placing them in double jeopardy of punishment.

5.15 Defendants are, and at all relevant times herein were, state actors working for state entities and as such are obligated to provide Plaintiff's constituents rights under the double jeopardy clauses of the Fifth Amendment to the United States Constitution as incorporated by the Fourteenth Amendment.

5.16 Defendants, by their actions, inactions, and omissions, have and continue to violate DRW's constituents' legal rights under the double jeopardy clause of the Fifth Amendment of the United State Constitution as incorporated by the Fourteenth Amendment by placing them at jeopardy of punishment after

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521 · Fax: (206) 957-0729

previously being acquitted after being placed in jeopardy of punishment for the same act(s).

**COUNT FIVE:    VIOLATIONS OF THE U.S. CONSTITUTION ARTICLE I § 9 PROHIBITION OF *EX POST FACTO* PUNISHMENT**

5.17    Plaintiffs reallege and reincorporate paragraphs 1.1 through 5.16 above.

5.18    ESSB 6610 § 2 violates patients' Constitutional rights to be free from punishment resulting from a change in law as prohibited by the *ex post facto* clause in Article I Section 9 of the U.S. Constitution.

5.19    Defendants are, and at all relevant times herein were, state actors working for state entities and as such are obligated to provide Plaintiff's constituents rights under the *ex post facto* clauses of the United States Constitution.

5.20    Defendants, by their actions, inactions, and omissions, have and continue to violate DRW's constituents' legal rights secured by the *ex post facto* clauses of the United State Constitution by punishing them pursuant to a law that authorizes this punishment that was passed after they were acquitted.

**COUNT SIX:    VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. 12131, et seq. (Against Defendants DSHS and DOC)**

5.21    Plaintiffs reallege and reincorporate paragraphs 1.1 through 5.20 above.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 29

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

5.22    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

5.23    In enacting the ADA, Congress found that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including . . . segregation . . . ."  42 U.S.C. § 12101(a)(5).

5.24    Regulations implementing Title II of the ADA provide:  "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).

5.25    Defendants DSHS and DOC are public entities within the meaning of Title II of the ADA.

5.26    Regulations implementing Title II of the ADA provide:  "A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration:  (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . ."  28 C.F.R. § 35.130(b)(3).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 30

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

5.27   The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA.  In doing so, the Supreme Court interpreted the ADA's "integration mandate" as requiring persons with disabilities to be served in the community when:  (1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and, (3) community placement can be reasonably accommodated.  *Id.*  527 U.S. at 607.

5.28   The ADA prohibits discrimination based on type of disability.

5.29   The ADA's regulations further provide that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  28 C.F.R. 35.130(b)(8).

5.30   Pursuant to the ADA, public entities are required to provide meaningful access to their programs, services and activities, and provide any accommodations or modifications necessary for people with disabilities to access those services.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 31

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

5.31    Disability Rights Washington-'s constituents and clients who are now or may be acquitted  NGRI in the future are qualified individual with disabilities that affect one or more substantial and significant life activities and/or functions including, but not limited to: self-care, independent living, making informed decisions regarding his health and mental health care and legal matters, money management, among other major life activities and functions.

5.32    Defendants, by their actions, inactions, and omissions, have and continue to violate DRW's constituents' legal rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, the regulations promulgated thereunder at 28 C.F.R. Part 35**,** and 42 U.S.C. § 1983, by:

      a.    Placing Disability Rights Washington's constituents and clients at imminent risk of unnecessary confinement in prison or other correctional facility that are not the most integrated community placements possible, in violation of the ADA's integration mandate;

      b.    Aiding and perpetuating discrimination against DRW constituents who have been acquitted by a court of law due to the presence of a mental illness, developmental disabilities, and traumatic brain injuries.

      c.    Discriminating against Plaintiffs and DRW's constituents in ways that include, but are not limited to, failing to provide reasonable modifications to programs and services.

      d.    Utilizing eligibility criteria and methods of administration that subject Plaintiffs and DRW's constituents to discrimination on the basis of disability, in violation of 28 C.F.R. § 35.130(b)(3) &(8), and otherwise denied meaningful access to their programs, services and activities.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 32

5.33   Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT SEVEN: SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794** *et seq.* **(Against Defendants DSHS And DOC)**

5.34   Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

5.35   Section 504 of the Rehabilitation Act of 1973, on which the ADA is modeled, sets forth similar protections against discrimination by recipients of federal funds, such as Defendants herein.  29 U.S.C. §§ 794-794a.  These protections include the prohibition against unnecessary segregation.  Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities.  28 C.F.R. § 41.51(d).

5.36   Section 504 prohibits discrimination based on type of disability.

5.37   Section 504's regulations prohibit recipients of federal financial assistance from utiliz[ing] criteria or methods of administration . . . (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 33

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

program with respect to handicapped persons.  28 C.F.R. § 41.51(b)(3)(i); 45 C.F.R. § 84.4(b)(4).

5.38   Each of Plaintiff Disability Rights Washington's affected constituents and clients and the named plaintiffs is a "qualified individual with a disability" within the meaning of Section 504 in that they mental impairments that substantially limits one or more major life activities; and meet the essential eligibility requirements in that they (2) are capable of living independently in their own homes and/or in the most integrated community setting possible, with assistance;

5.39   Defendants' actions have placed members of the Plaintiff Class at risk of unnecessary confinement in institutions, including nursing facilities, or other out-of-home placements that are not the most integrated community placements possible, in violation of Section 504's integration mandate.

5.40   Defendants discriminate against Plaintiffs and Class members in ways that include, but are not limited to, failing to provide reasonable modifications to programs and services.

5.41   Defendants have utilized eligibility criteria and methods of administration that subject Plaintiffs and members of the Plaintiff Class to discrimination on the basis of disability in violation of 28 C.F.R. § 41.51(b)(3)(i)

and 45 C.F.R. § 84.4(b)(4), and otherwise denied meaningful access to their

programs, services and activities.

5.42   Defendants' actions discriminate against individuals with cognitive

and psychiatric disabilities, based on their type of disability, because the

Defendants' actions violate Section 504.

5.43   Pursuant to 29 U.S.C. § 794, Plaintiffs are entitled to declaratory and

injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing

this action.

## VI.   **PRAYER FOR RELIEF**

Plaintiffs respectfully pray that that this Honorable Court enter an Order:

1.      Assuming jurisdiction over this case.

2.      Declaring and nullifying ESSB 6610 § 2 as violating of Plaintiffs'

rights:  to procedural and substantive due process, and equal protection under the

law as guaranteed to them by the Fourteenth Amendment to the United States

Constitution; the Fifth Amendment to the United States Constitution as

incorporated by the Fourteenth Amendment; the prohibition against *ex post facto*

punishments under Article I Section 9 of the United States Constitution; and under

Title II of the ADA and the regulations promulgated thereunder, and Section 504

of the Rehabilitation Ac of 1973 and the regulations promulgated thereunder.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 35

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

3.      Preliminarily and permanently enjoining Defendants from transferring patients acquitted as NGRI from Eastern and Western State Hospitals to any prison or other facility operated by the DOC.

4.      Preliminarily and permanently enjoining Defendants from refusing to admit individuals found acquitted NGRI to the forensic units of Eastern and Western State Hospitals and instead transferring them to a prison or other facility operated by DOC.

5.      For an order awarding plaintiffs' reasonable attorneys' fees and costs;

6.      Any other relief this Honorable Court deems just and proper.

Dated this 31st day of March, 2010.

Respectfully Submitted,

DISABILITY RIGHTS WASHINGTON

s/David R. Carlson
David R. Carlson, WSBA # 35767
Attorney for Plaintiff

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF- 36